Wendang, for the Leakless TRI, Mr. Young, for Petitioner, and Ms. Mishra, for Respondent. Mr. Young, for the Leakless TRI, Mr. Young, for Respondent. Good morning. Good morning, and may it please the Court. I am Min Wendang, for the Court-Appointed Amicus. There are two fundamental errors in Mr. Young's SEC proceedings. There is a Lucia error. The ALJ was not constitutionally appointed. And there was a Kokesh error. The discouragement penalty exceeded the statute of limitations. This Court has the jurisdiction to correct those errors, and it should. I'll start with the jurisdictional question. Mr. Young made a reasonable error that he fixed right away. This Court has already held that the review provisions at issue here can be equitably told, and that was in the New York Republican State Committee case. Well, that opinion didn't face Rule 26b as interpreted in Neutraceutical. That's right, Your Honor. That case did not consider that. But in Neutraceutical, what was important was that Rule 26b-1 is very clear in not allowing any exceptions. Rule 26b-2, which is at issue here, does allow exceptions. And so the two read together, Rule 26b-2 and the statutory scheme, where equitable tolling is presumed and has not been rebutted by a clear statement by Congress, it seems that in these circumstances, this Court should allow what Congress intended, What are you doing with the language at the end, well, end of the opening paragraph of 26b, that the Court may not extend the time to file and there are two? Yes, Your Honor. At the end of b-2, it says that there can be exception if the statute so allows it. And so that simply instructs this Court to look to the relevant statute. And the relevant statute here, as this Court has decided in New York Republican State Committee, can be equitably tolled. So in the circumstances, reading the rule and the statute together, equitable tolling is allowed. And given that, equitable tolling should be allowed here. In this case, Mr. Young actually filed a petition on time. He served the SEC on time. But he didn't file it in any court or competent jurisdiction on time. That's right, Your Honor. He made, he was acting per se. He called the clerk to confirm, and he made a very understandable mistake. The two courts' names are very similar. In fact, the statutes at issue here don't even clearly refer to this Court. If you look on page 1a of the green brief, the review provision for the Securities Act refers to this Court as the United States Court of Appeals for the District of Columbia. It doesn't say D.C. Circuit. Instead, it gives a name that's very similar. The United States Court of Appeals. That's right, Your Honor. Where did he file his? I'm sorry? In the District of Columbia Court of Appeals, Your Honor. Right. Not the United States Court. That's right, Your Honor. And you and I and other lawyers understand that United States means a federal court. But Mr. Young was per se. He did not know that. And it was a reasonable thing for a per se person not to understand. But how does that comport with the longstanding rules of equitable tolling? This was not something that was external to Mr. Young. We believe, Your Honor, that there are three conditions under Holland v. Florida for equitable tolling. Due diligence, which Mr. Young very clearly demonstrated. Lack of prejudice, which, again, the government does not contest. And as you say, extraordinary circumstances. And we believe that that factor is met here. The extraordinary circumstance is the conflation of a statute that is unclear and two courts whose names are very similar. And, Mr. Young says, he contacted the clerk and whatever conversation we had with that clerk of the D.C. Court of Appeals did not correct his misimpression that the D.C. Court of Appeals was the correct court to file in. The decision that he got from the SEC, did it say anything about where to file? No, Your Honor. That is not in the decision itself. And, as I said, if you look to the statute, the statute is somewhat unclear. It gives this court a name that this court has not had since 1948. So in these circumstances, it is very similar to the Burnett case. In that case, a petitioner filed in the wrong court, in a state court, which for very understandable reasons, ordinarily under the statute, state courts have jurisdiction over the claims. But in that particular case, there was an Ohio State statute that prevented those claims from being filed in that particular court. When, eight days later, the claims within that case filed in federal court, the United States Supreme Court said that that situation warranted equitable tolling. And, again, the key thing was that there was no prejudice, the parties were diligent, and given the confusion, the understandable confusion that a represented party made, the Supreme Court held there was equitable tolling. So that case is on all fours with this situation here, and we believe that that means that this court should exercise its discretion and equitably toll the statute by one day. But we haven't held that equitable tolling works differently for unrepresented parties than it does for represented parties, have we? Not expressly, no, Your Honor. But you have recognized that there is some latitude given to unrepresented parties. For example, in this Wahlberg case, this court has indicated that being pro se by itself with nothing more could be a reasonable grounds not to have raised an issue before the SEC. That was victimed, though, right? That's right, Your Honor. The court did not reach it. But it reflects, Your Honor, the longstanding understanding that some procedural latitude should be given to parties who are not lawyers, who do not understand the way that lawyers understand the distinction between a United States courts and not a United States court. The mistake that Mr. Yeung made was very understandable, and given that there was no prejudice, the government has not claimed prejudice, given that Mr. Yeung acted diligently, equitable tolling is warranted. Moving to the merits, on the Lucia issue, there is no question that the ALJ in this case was not constitutionally appointed. The government does not dispute this. So the only question is if this court can give Mr. Yeung relief. Now, a Lucia error is a structural and constitutional error that sounds in separation of powers. And the Supreme Court has said that that is the type of error that courts should correct. Further, it was reasonable for Mr. Yeung, who was acting pro se before the SEC, not to raise this novel constitutional argument in his petition to the SEC. At the time, it was two years away from the first SEC decision addressing the Lucia issue. It was not until the SEC's decision in Lucia, actually, that it was even known how ALJs were appointed and that they, in fact, were not properly appointed. And, of course, it was many years from the Supreme Court's decision in Lucia itself. Further, Lucia represented a fundamental change in the law. Prior to Lucia, there were two plausible interpretations of the Freytag case. And the interpretation that this court endorsed in the Landry case was that ALJs, FDIC ALJs in that case, but similar to SEC ALJs, were not inferior officers and, therefore, were not subject to the appointments clause. Lucia made the resolution of the question beyond doubt. So there is, at this stage, nothing for the court to consider because the Supreme Court has already said that the SEC ALJ who presided over Mr. Yeung's hearing was unconstitutionally appointed. Third, or second, on the Kokesh issue, the disgorgement here, the disgorgement sanction imposed against Mr. Yeung, exceeds or reaches conduct that exceeds the five-year statute of limitations. Now, Mr. Yeung did not raise this issue before the SEC either, but the SEC expressly ruled on this question. If you look at page 198 of the Joint Appendix, the SEC said that Section 2462, the statute of limitations, does not apply to disgorgement orders. So it decided it and is now teed up for this court to decide. Given that it is clear that the statute of limitations applies in this case and it is clear that the disgorgement order reaches conduct that is outside the statute of limitations, at the very least, this court should remand so that that sanction can be properly calculated. So for these reasons, we ask that the court grant Mr. Yeung's petition, vacate and remand the SEC's decision. All right. We'll give you a couple of minutes on that. Thank you. May it please the Court. My name is Bernard Yeung, the appellant, pro se. Forgive my nervousness. I haven't done this before, as you can probably imagine. Over the course of 14 years, Alan Stanford and four other executives perpetrated one of the worst financial crimes in history. It's undisputed that there was a well-hidden pattern of lies, active concealment of the activities, and outright theft. At the heart of this crime was fraud, deception, and the falsification of records. For two years at the end of Stanford's scheme, I served as the Chief Compliance Officer for the North American Group of Companies and was one of the many people who was lied to and manipulated. During this time, I asked for and received information from the perpetrators but was repeatedly misled and deceived, as were others, including the SEC and FINRA. Three and a half years after the unraveling of the scheme, I was charged by the SEC with various violations of various security rules. For example, they misquoted or mischaracterized the roadshow and stated that I was reckless in conducting the roadshow because the purpose in their mind was to, the purpose in their mind was for me to promote the soundness, quote-unquote, of the bank. A clear review of the record shows that I never used those words, and a clear review of the record shows what the intention of the roadshow was. They also stated that I was negligent and reckless in approving the marketing materials, although they know, and the record shows, I had no ability to approve any document issued by the bank. My purpose in approving that was for use, approving the material based on my understanding of the facts. They also stated that I was negligent and reckless in the training of financial advisors, but two things are important here. They said I was reckless and negligent in training the advisors because I failed to inform them that I did not know the contents of the underlying portfolio or did not verify the portfolio. Two facts arise here as a result of reviewing the record. Number one, they didn't have any witness that testified that I actually trained a financial advisor. No financial advisor testified that I trained them. And number two, the verification of the underlying portfolio is not required under current statutes, laws, and regulations. And as a reminder to this court, the bank that we're talking about was an offshore bank that was regulated by a sovereign regulator and had audited financials by a duly vetted and approved accounting firm. Another allegation they make is they talk about Madoff. They bring up Madoff, and as you're aware, the timing of the SEC's raid against Stanford coincided very closely with that of Madoff. One of the things that I approved in December of 2008 was Madoff talking points that were authored by the president of the bank and approved by the Stanford legal department. Those talking points talked about the exposure that the bank did not have and compared the bank's exposure to what Madoff had. This was authored, like I said, by the president of the bank, and this confirmed all of the representations made to me during my conversation with the Antibian regulator less than two weeks prior to this communication. I spent 19 years as a regulator. I know how to do my job. I know how to do due diligence. I know how to do compliance. I was responsible for oversight of FINRA's examinations and firms in the state of Texas. As a result of this experience, one of the things they taught you was to document everything that you did, and I documented my files. But it just seems interesting that of the only three files missing on the SEC's CATE file index are my three due diligence files. To this day, I have not seen those files. I was not allowed to see those files. I have not seen those files in preparation of my defense. These were critical exculpatory files that were preserved as part of the record. The record reflects I did exactly what I was trained to do and exactly what I would have done as a regulator, including but not limited to talking to the actual regulator face-to-face in a meeting that would be like me going to Mary Shapiro and asking about Stanford International Bank. In summary, the SEC is attempting to hold me accountable for the sophisticated criminal activities of Alan Stanford and his accomplices. These are the same individuals who concealed their activity for 14 years from the SEC, FINRA, and others. Five of the perpetrators have faced criminal prosecution and have been found guilty or pled guilty. The final participant, the Antigua regulator, is in U.S. custody in Houston awaiting trial. I urge you to read the entire transcript of the trial. It will become clear that the flawed SEC decision is wholly unsupported by the evidence in the record and not based on facts. Like the SEC and FINRA, I did my job as best I could when confronted with obstruction, lies, and willful concealment. As the FBI testified on my behalf at trial, the nature of the fraud, including collusion by the Antigua regulator and the accounting firm, was so carefully orchestrated that it was undetectable. Finally, it's an inconvenient truth for the SEC that I was in no better position to uncover the fraud than they. I respectfully request this Court use its wisdom and discernment and vacate the SEC's decision as it is unsupported by the record or evidence in this case. Or at the very least, revamp the proceeding before the U.S. District Court or a validly appointed DA. Thank you. Thank you. May it please the Court, Dean Emischer for the Securities and Exchange Commission. Mr. Young was the Chief Compliance Officer of the main U.S. sales arm for the multibillion-dollar Stanford Ponzi scheme fraud. The record from 26 witnesses and well over 300 exhibits shows he exploited his regulatory background for pay to instill false trust in American investors to their great loss, all while deflecting scrutiny despite mounting red flags and knowing he didn't know what he claimed to about the fraudulent bank. Could you speak up a little? Sure, I'm sorry, Your Honor. And slow down just a little, please. Absolutely, Your Honor. This Court should adhere to the statutes and precedent that require rejecting this petition. Turning to the jurisdiction issue this Court ordered briefed, we're happy to answer any questions with respect to that. Well, you assert nutraceutical and 24B, but it seems to me the key language of 24B, the key language you rely on, is the Court may not extend the time to file then the various things, which include a petition for review. But as some courts have observed, rather obviously, there's a difference between extending the time to file and applying equitable tolling. So 26B does not seem to apply to equitable tolling, and that's clearly the case in nutraceutical. In nutraceutical, the part of the nutraceutical that's most, excuse me, the part of nutraceutical that is most dispositive here is when it talks about how rules in the mandatory camp are not susceptible of equitable tolling. And in nutraceutical there was only a rule, but here there is a statute. It didn't have an equitable tolling issue in front of it. All it had was a request for a petition to extend the time to filing, which is different. I believe nutraceutical said, the quote is, the rules in the mandatory camp are not susceptible of the approach here, and it described that approach as equitable tolling elsewhere in the opinion. But regardless of the... Yeah, there's one passage where there's a reference to equitable tolling. That's completely unnecessary to the decision of the Court. We would understand a lot of the Supreme Court's case law to talk about statutes in particular, because nutraceutical involved a rule, not a statute. And here we have statutes that by their expressed terms make the filing in such court within 60 days mandatory. Well, that takes you back to New York Republican State Party. Well, the portion of New York State Republican Party that talks about whether equitable tolling would be available in appropriate circumstances was not part of the holding as expressly stated in New York State Republican Party. Well, honey, why do you say that? I mean, the Court went out of its way to find that equitable tolling could apply. Sure. Then it said when there was an unexcused 4-year delay, it didn't apply. Hardly a great surprise. So our understanding is that it's based in part on the Court's statement, we also hold that such challenges must be brought in this Court within 60 days, and there are no grounds for exception in this case. In this case? Isn't the operative phrase there, in this case, 4 years? But because it's not necessary to the result to reject on the equitable tolling standard whether it actually met the equitable tolling standard. Well, your claim is a warrant of jurisdiction, and can the court under Steele Company even get to the question of the particular facts until it has decided that some set of facts might be relevant? So this Court has some case law that actually goes both ways on this. There is an opinion, actually I believe it's Kramer and Shalabi, that is some of the older cases that suggest that this Court actually could dispose of this issue. Cases before Steele Company? No, they're after Steele Company. I believe they are also even after Sinocam. That said, your Honor, we don't believe that that's necessary here because we believe that even if the statute is not jurisdictional, it is at least mandatory because there is a statute which is even greater than what there was in Nutraceutical, and Nutraceutical emphasized that a statute would be much more likely to be found jurisdictional. And the terms of this statute are expressly mandatory. We have the language of New York Republican State Committee. Yes, Your Honor, but there is also the express holding of this Court in domestic securities with respect to the exact same, essentially the exact same statutory language in domestic securities in Judge Zantel's opinion from much earlier. So it was actually held that failure to file a timely petition deprives this Court of subject matter jurisdiction. And we understand that reasoning to survive Arbaugh because it is exactly the kind of reasoning Arbaugh talked about as being something that goes to the Court's power to hear the case. In addition, Your Honor, we would point out that this the Supreme Court has said in Manrique and in Nutraceutical and a number of others that if the rule is at least mandatory, then it would foreclose equitable tolling. We understand, or at least equitable exceptions, et cetera. And we think that regardless of all of that, here there was no basis for equitable tolling because it did not meet the requirement. We would refer to the general question of equitable tolling. Are you saying it makes no difference whether the statute is jurisdictional as opposed to simply a mandatory case management? What we're saying is that after Arbaugh and after the more recent Supreme Court cases like Nutraceutical, if the statute is at least mandatory, it should be understood to foreclose equitable tolling. But regardless, we think that this Court already held this exchange act provision to be jurisdictional in domestic securities. Let's go back to the question I asked you. Sure. If it's not jurisdictional but it is mandatory, that is no different result than if it is jurisdictional. Is that your position? Our understanding of the Supreme Court case law is that, Your Honor. Okay. Thank you. I'd also like to clarify just one consideration with respect to the equitable tolling standard. The statement was made by Amicus that lack of prejudice is a factor. It's not one of the two factors under the Supreme Court's approach. And in Menominee, it clarified that lack of prejudice cannot assist in – it does not supplant the two factors. It might be a consideration if the Court were to decide whether there's – it was going to exercise its equitable discretion, but it's not actually a factor. If this Court has no further questions, we'll rest. Talk about the statute of limitations question that the amicus raised, please. Talk about it generally? Excuse me, Your Honor. Well, tell me what the government's position is with respect to that at this point. Sure. So our understanding, and to clarify a misconception there as well, is that this was not only not raised, but the Commission did not pass on it. And specifically, the portion of the Commission's opinion that is pointed to, we explained in our brief, actually refers to a different non-Section 2462 issue that was raised by Mr. Young in his reply brief. At least that's how we understand it. Your position on the argument of amicus is it was not before, is that correct? It was not preserved and it was not before? Correct. We think it's foreclosed by this Court's holding in KPMG, et cetera. Yeah, but the cases where when the agency addresses an issue, as it did here, the Court forgives the Petitioner from having failed to raise it. We understand that, Your Honor. We're not actually discussing that. We're talking about how this wasn't actually the issue passed upon by the Commission. So the argument was that the Commission actually addressed this issue, right? Our understanding, Your Honor, is that if the Commission's opinion refers to it as being something Mr. Young argued, the point that he argued was not this one. Did not the language of the Commission cover this issue? To be clear, Your Honor, we understand this Court's opinion in Zacharias to foreclose understanding the Commission's analysis on broader issues, the other statute of limitations issues that Mr. Young did preserve, to actually extend to this new disforgement amount statute of limitations issue that amicus has presented. And we would say, in Zacharias, a distinction was made between that kind of amount versus overall eligibility for disforgement, Section 2462 argument. And so we would understand this Court in Zacharias to already determine that that kind of thing would not be sufficient to preserve it. And so the Commission's addressing a non-Section 2462 argument about his total salary amount for purposes of measuring disforgement would not actually preserve some question about under Section 2462 how much should be taken out because of the statute of limitations. Any other questions? All right. I don't believe we have any other questions. Do you have any concluding remarks? Well, I'd first just ask the Court, if it's possible, I'd just make just a few clarifications on some of the statements that were made that were slightly inaccurate. With respect, or a little bit, to clarify some things for the Court, on Mr. Young's presentation, I would just note that Mr. Young's description of, with respect to whether he promoted the soundness of the bank, that's something that our brief addresses, but especially when there's testimony that Mr. Young invoked his 19-year regulatory experience in order to convince the advisors that he had, in fact, done due diligence that would lead to that result. And the express statement that was testified to by one individual was also that he would stake his 19-year reputation on what he knew about the bank, including about its soundness. There's also an email in the record that goes to how financial advisors understood it. And so we've cited to those things in our brief. We don't think there's much else necessary to clarify on that point, but I would just like to end there. Thank you. Thank you. I think Counsel for Amicus had a couple minutes left. We'll give you two minutes. Thank you, Your Honor. Just two points, Your Honors. First, equitable tolling exists to prevent injustices. Although Congress can foreclose equitable tolling, it is presumed that it does not, and it must say so clearly when it chooses to. This Court correctly held in New York Republican State Committee that the review provisions at issue here can be equitably tolled. And domestic securities, the case of the government sides, is not to the contrary. Because even though that Court does say something about jurisdictional, it then goes on to consider whether or not there might be an exception in that case for lack of notice. That is an equitable exception. It does not appear in the statute. So if that was available, which domestic securities says was available, it must mean that when domestic securities used the term jurisdictional, it did not use it in the strict sense that the government is advocating for here. Second, on the Kokesh issue, the government presents a very strange reading of the decision. The decision says, the statute of limitations does not apply to the imposition of equitable remedial sanctions, such as orders of disgorgement. And then it cites for that proposition timber vest. And the parenthetical to that says, explaining that industry bars, cease and desist orders, and disgorgement are equitable remedies and are not subject to Section 2462. So as Your Honor recognized, even though, yes, Mr. Young did not press this issue before the SEC, the SEC clearly passed on it, and so this Court can reach it. Thank you, Your Honor. Thank you. And Mr. Windang, you were appointed by the Court to present our arguments as amicus curiae, and we appreciate your service. Thank you, Your Honor.
judges: Wilkins, Williams, Sentelle